# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Criminal No. 24-1 |
| ) | |
| ELIJAH HANNA, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

I. Introduction

Pending now before the court is a motion to show cause (ECF No. 97) filed by counsel on behalf of defendant Elijah Hanna ("Hanna"), who was found to be incompetent to proceed with sentencing. Hanna asks the court to order the government to comply with this court's September 12, 2025 order entered pursuant to 18 U.S.C. § 4241(d)(1), which directed that "Hanna be placed in the custody of the Attorney General of the United States for treatment at a suitable facility for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward." (ECF No. 95). The government filed a response (ECF No. 99). The motion is ripe for disposition.

II. Factual and Procedural Background

On November 14, 2024, Hanna pled guilty to counts 1, 2 and 3 of the superseding indictment pursuant to a plea agreement with an agreed sentence. While awaiting sentencing, Hanna witnessed a stabbing in his pod while held at the Northeast Ohio Correctional Center ("NEOCC"). *See* ECF Nos. 66, 68.[1]

---

[1] Hanna was initially accused of committing the stabbing, but the government later clarified that the accusation was incorrect.

1

On May 1, 2025, Hanna appeared in court for a sentencing hearing. He was uncommunicative and non-responsive. His demeanor and affect were markedly worse than he displayed in his prior court appearances. The court, the government, and defense counsel harbored serious concerns about his physical and mental health and his competence to proceed with the hearing. The hearing was continued and Hanna was returned to the custody of the United States Marshal ("USM"). The court strongly recommended to the USM that Hanna not be returned to NEOCC and that Hanna receive an <u>immediate</u> physical and mental health and substance abuse evaluation and treatment, if necessary. (ECF No. 76) (emphasis in original). The USM declined to accept that recommendation. On May 28, 2025, with the agreement of all parties, the court ordered Hanna to be placed in the custody of the Attorney General to be evaluated to determine his competency (ECF No. 86). Hanna was transported to MDC Brooklyn.

The court held a telephone conference on September 11, 2025, upon receiving an evaluation report prepared by Ashley Jenkins, Psy. D., HSP, dated September 3, 2025, in which Dr. Jenkins opined that Hanna does not presently have the capacity to consistently assist legal counsel in his defense and fully attend to courtroom procedures and is not currently competent to stand trial, and recommended that Hanna be committed for a period of restoration of competency. On September 12, 2025, with the agreement of both parties, the court issued an order pursuant to 18 U.S.C. § 4241(d)(1), directing that "Hanna be placed in the custody of the Attorney General of the United States for treatment at a suitable facility for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the

proceedings to go forward." (ECF No. 95).

The court held a telephone status conference on January 27, 2026. At that time, the court (and defense counsel) learned that Hanna remained at MDC Brooklyn and had not yet been placed at a suitable facility to begin his evaluation and restoration of competency treatment. This motion followed.

III. Discussion

Hanna, citing *Jackson v. Indiana*, 406 U.S. 715 (1972), argues that his indefinite commitment solely on account of his incompetence violates his Due Process rights and the time limits set forth in § 4241(d). Hanna asks this court to order immediate hospitalization at a Bureau of Prisons ("BOP") medical facility by a date certain or release Hanna from custody pending that placement. Hanna also asks the court to order the Attorney General, BOP, or USM to explain why continued detention is lawful and provide a definite timetable for placement.

A. Delay and lack of explanation

The government concedes there was a delay in this case. In its response, the government reported that:

> On November 24, 2025, the government received an email from MDC Brooklyn, inquiring as to whether the paperwork for the defendant's restoration had been submitted from USMS to the Bureau of Prisons. The government was surprised to learn that this paperwork had not been submitted and immediately contacted the USMS to ensure the paperwork was sent to the BOP as soon as possible. The Court's Order was submitted to the BOP on December 1, 2025, and the defendant is expected to be admitted to FMC Devens for restoration proceedings in early March 2026. (Ex. 1 at 5).

ECF No. 99 at 2-3. The court (and presumably defense counsel) was not notified about this

3

paperwork delay at that time.

The prosecutor explained he "was under the impression that the Court and/or the USMS directly addressed the transmission of such orders." *Id.* at 2 n.2. The prosecutor noted that the court's May 28, 2025 order (ECF No. 86) directing that Hanna be transferred to a BOP facility for a competency evaluation was accomplished without his involvement. *Id.*

The prosecutor's explanation accords with the court's own understanding of the paperwork responsibilities. On September 12, 2025, the day the § 4241(d) order was entered, the court was advised that the USM was to be sent the order and the USM would provide the order to the BOP. The court sent the order that same day to the USM's office in Pittsburgh, PA.

Prompted by the AUSA's receipt of an email from MDC Brooklyn, the USM provided the order to the BOP on December 21, 2025. No explanation was provided by the USM about this three-month delay.[2] The court will hold a status conference on February 24, 2026 at 3:00 p.m., at which the appropriate person from the USM shall participate and explain why the order was not promptly provided to the BOP.

The court expresses its concern with the delay in transmission of its order to the BOP and wants to determine how this kind of delay may be avoided.

B. Mootness/Disparate Treatment of 9th Circuit defendants

The government argues that this motion is moot because Hanna is to be assigned to an appropriate facility in March 2026. The court recognizes that Hanna was designated to a suitable facility and his transfer is expected to occur the second week of March 2026. The court also recognizes that the government provided an explanation about why the delay occurred, as

---

[2] The pending motion involves only this criminal case. The court makes no findings about whether Hanna may have other avenues to redress his grievances.

requested in the motion. The motion is not entirely moot. As of the date of this opinion and order, Hanna is still not placed in a suitable facility and there was no explanation for the three-month delay by the USM in notifying the BOP.

The government submitted a declaration by Dia Brannen, Ph.D. ("Brannen"), the BOP official who oversees referrals for placement in a suitable facility for restoration services. Brannen offers several reasons for the length of the delay in placing Hanna, including, backlogs at appropriate facilities, skilled staffing shortages, the three-month delay by the USM in uploading the order in the Capture system and the decision in *United States v. Donnelly*, No. 22-30081 (9th Cir. 2022), which caused the BOP to prioritize restoration beds "for individuals designated from the district courts within the Ninth Circuit," which bumps everyone else in the pipeline back. ECF No. 99-1 at 3-4. The BOP's response raises an obvious Equal Protection problem based solely on a prisoner's location. Incompetent defendants within the Third Circuit, like Hanna, should be entitled to the exact same consideration and priority in the pipeline as similarly-situated individuals in the Ninth Circuit.

  C. Alleged statutory violation

Section 4241(d) provides, in its entirety (emphasis added):

> (d) Determination and disposition.--If, after the hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General. The Attorney General **shall hospitalize** the defendant for treatment in a suitable facility--
>  (1) **for such a reasonable period of time, not to exceed four months**, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward; and
>  (2) for an additional reasonable period of time until--
>   (A) his mental condition is so improved that trial may proceed, if the court

> finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the proceedings to go forward; or
> (B) the pending charges against him are disposed of according to law; whichever is earlier.
>
> If, at the end of the time period specified, it is determined that the defendant's mental condition has not so improved as to permit the proceedings to go forward, the defendant is subject to the provisions of sections 4246 and 4248.

In *Donnelly*, the majority opinion rejected a statutory remedy and concluded that "the text of the statute makes clear that the four-month time limit [in § 4241(d)] applies only to the period of hospitalization, and thus begins to run when the defendant has been hospitalized." *Id.* The concurrence would have found that the 4-month statutory period applied to the entire period of pre-hospitalization, evaluation and treatment. *Id.* at 1108.

This court agrees with the majority of decisions and concludes that the 4-month statutory period refers only to the length of the hospitalization, and the statute is silent with respect to the length of pre-designation delay. Thus, the court will focus on whether there is a Due Process violation.

D. Alleged Due Process violation

"In *Jackson*, the Supreme Court held that the Fourteenth Amendment's Due Process Clause prohibits a State from confining a defendant for an indefinite period simply because he is not competent to stand trial." *United States v. Donnelly*, 41 F.4th 1102, 1105 (9th Cir. 2022). "At the least, due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." *Id.* (quoting *Jackson*, 406 U.S. at 738). A person committed "solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a

substantial probability that he will attain that capacity in the foreseeable future." *Id.* (quoting *Jackson*, 406 U.S. at 738).

*Jackson* is factually distinguishable from this case. It involved a defendant who was committed, pretrial, for an indefinite period (3 ½ years and counting) despite his attorney's representation that restoration was highly unlikely. Here, Hanna pleaded guilty, has been waiting for about 6 months and the government represented that he would be placed in a suitable facility within one month. There is not an indefinite period of detention and there is at least some hope that Hanna will be restored to competency because he was competent to plead guilty.

In *Donnelly*, the defendant had been detained for 8 months. The majority opinion rejected a statutory remedy, but held that the pre-hospitalization delay violated Due Process because the purpose of the pre-hospitalization period "is simply to identify an appropriate treatment facility and arrange for the defendant's transportation to that facility." *Id.* at 1106. The court rejected the government's argument (similar to that made in this case) that the defendant suffered no harm because he would have been detained in any event. *Id.* at n. 2. To remedy the Due Process violation, the court ordered the defendant to be hospitalized in a suitable facility within 7 days, but noted that dismissal of the indictment would not be warranted. *Id.* at 1107 & n.3.

In *United States v. Wazny*, No. 3:21-CR-247, 2022 WL 17363048 (M.D. Pa. Dec. 1, 2022), the court found "that, while the time limit within which a defendant must be admitted to a suitable facility is not fixed, eight months facially offends basic due process principles and is presumptively unreasonable. Unlike the Ninth Circuit however, for the reasons set forth infra, this Court is nonetheless not persuaded that defendant Wazny's current period of pre-

hospitalization custody of six-months clearly exceeds what can be deemed a reasonable period of time." *Id.* at *5. The court concluded that it ""possesses supervisory authority to order the government to rectify violations of law with remedies shaped to redress the corresponding injury." *Id.* (quoting *Donnelly*). The court ordered the government to hospitalize the defendant at a suitable facility within 30 days. *Id.; but see United States v. Delorme,* No. CR 19-2322 JB, 2023 WL 8020262, at *26-30 (D.N.M. Nov. 17, 2023) (explaining why expediting transfer would be an inappropriate and unworkable use of the court's supervisory power).

      E. Release pending designation

Hanna has been located at MDC Brooklyn since September 2025. He asks for immediate release until his designated spot at a suitable facility becomes available. In *United States v. Bradley*, 112 F.4th 1132 (7th Cir. 2024), the court assumed, without deciding, "that a judge may order a detained person to be released while the Bureau continues to pore over her medical records." *Id.* at 1134. That relief is not warranted in this case, for several reasons. First, Hanna's mental condition, as observed by the court, would not permit him to independently care for himself and no release plan was proposed. Second, he is receiving some mental health oversight while at MDC Brooklyn. Third, his designation to a suitable facility should occur within 30 days and transportation to that facility will be the responsibility of the government while Hanna remains detained.

Conclusion

The court considers this a grave matter. Hanna's competency materially declined while in USM custody. In September 2025, the court entered the order to require the BOP to provide services to restore Hanna to competency in accordance with the statute, but the USM did not timely transmit that order to the BOP. The court will hold a status conference on February 24, 2026 at 3:00 p.m., for the USM to provide an explanation and to determine how to avoid delays in the future.

The show cause information was provided by the government and the court will deny without prejudice the motion to show cause (ECF No. 97) filed on behalf of Hanna.

By the court,

/s/ JOY FLOWERS CONTI
Joy Flowers Conti
Senior United States District Judge